Charles CHERRY, Appellant

v.

Stacy Randall CARROLL and Amanda Taylor[1], Appellees

NO. 2016–CA–000291–ME

Court of Appeals of Kentucky.

DECEMBER 22, 2016

1. Amanda Taylor is the natural mother of the three minors in this appeal. She is not a party to the appeal and did not appear—neither personally nor by counsel—in the trial court proceedings. As of March 9, 2015, she was in a residential drug recovery program in Lexington, Kentucky, and had rarely seen her sons. She has three other children of whom she does not have custody.

BRIEFS FOR APPELLANT: Beverly Ann Shea, Amber C. Dillon, Somerset, Kentucky

BRIEF FOR APPELLEE: Bethany L. Stanziano, Columbia, Kentucky

BEFORE: DIXON, NICKELL AND VANMETER, JUDGES.

## OPINION

NICKELL, JUDGE:

Charles Cherry, the biological father of three minor boys, appeals the Wayne Circuit Court's designation of Stacy Randall Carroll, the children's maternal grandfather, as *de facto* custodian and the award of joint custody to him and Carroll. This appeal presents two questions. Whether an award of *de facto* custodian status is interlocutory and whether a court may designate a person a *de facto* custodian solely because the Cabinet for Health and Family Services (CHFS) placed a child with him. For reasons expressed below, we deem this appeal properly before us and hold the trial court erroneously designated Carroll a *de facto* custodian when the three children, all over the age of three—had lived with him less than seven months rather than the year required by KRS[2] 403.270(1)(a). Reversal and remand for an appropriate order are necessary.

## FACTS

Three sons were born to Cherry and Taylor—in 2004, 2005 and 2007. In 2007, Taylor left the children with her aunt, Angie Miller. Later that year, Miller, living in Goshen, Indiana, petitioned the

Indiana courts and received custody of all three children.

From October 2007 until July 2012 the boys lived with Miller. Cherry was incarcerated during a portion of this time, falling $10,000 behind on his child support obligation; Taylor had her own legal woes; drugs were a problem for both.

In July 2012, Miller's husband developed significant health problems making it impossible for her to continue looking after the three boys as temporary custodian. A Dependency, Neglect and Abuse petition was filed for each child on July 23, 2012. The boys were removed from Miller and temporarily placed with Carroll on July 31, 2012, where the boys remained nearly seven months.

On February 19, 2013, the boys were returned to Cherry. That same day, Carroll petitioned the Wayne Circuit Court to designate him a *de facto* custodian and award him custody of all three boys. Carroll claimed permanent placement with him was in the children's best interests as he had been their sole caregiver and financial supporter since July 2012.

Cherry moved to dismiss the petition on March 12, 2013, claiming Carroll could not satisfy the statutory requirements to be named a *de facto* custodian because he had not been the children's primary caregiver and financial supporter and they had not resided with him for one year or more as required by KRS 403.270(1) since each child was more than three years of age. Cherry argued, since Carroll failed to qualify as a *de facto* custodian, and was not the children's parent, Carroll lacked standing to seek custody and asked for dismissal of the petition. Carroll filed a written response arguing he qualified as a *de facto* custodian "because he has been the pri-

2. Kentucky Revised Statutes.

mary caregiver for, and the sole financial supporter of the children involved in this matter since having the children placed with him by DCBS and the Court."

The motions were originally heard April 9, 2013. Carroll argued he qualified as a *de facto* custodian by tacking the nearly seven months he had the boys onto the nearly five years Miller—his sister—had the boys. Cherry argued tacking was permitted by neither statute nor case law.

Carroll then argued inclusion of the phrase, "or has been placed by the Department for Community Based Services," in KRS 403.270(1)(a) meant anyone with whom CHFS had temporarily placed a child—without anything more—qualified as a *de facto* custodian. While Carroll's counsel did not argue he could have moved for *de facto* status immediately upon accepting placement of the boys in his home, it was certainly implied, and that would be the result if his position is correct. The court overruled Cherry's motion to dismiss for the time being and scheduled a hearing on Carroll's request for *de facto* custodian status.

The matter was next heard June 17, 2013. Carroll argued Miller had the boys for the five years preceding their temporary placement in his home and Cherry never had physical possession of the boys during that time. Carroll argued this was probably a matter of first impression because he had found no cases consistent with his reading of the statute—that no time element applies when a child is placed with a prospective *de facto* custodian by CHFS. Cherry disagreed, referencing 16 Louise E. Graham & James E. Keller, *Kentucky Practice—Domestic Relations* § 21:29, Methods of Practice § 73.10 (3rd ed. 2008) and quoted the following passage:

> The amount of time necessary to become a *de facto* custodian depends on the

child's age or the source of the *de facto* custodian's custody. If the child is under the age of three, a party can become the *de facto* custodian by providing primary care and support for six months. *However, if the child is over age three or has been placed in the de facto custodian's home by the Department for Social Services, a party becomes a de facto custodian only after one year or more.*

(Emphasis added; footnotes omitted). In Cherry's view, because the children were all age three or older when CHFS temporarily placed them in Carroll's home, for Carroll to qualify and have standing to seek custody, the children had to live with him one year or more—a fact not even alleged in Carroll's petition. The court stated it had not found any law on the matter, but tended to agree with Carroll's interpretation of the statute. Thereafter, the court called for proof showing CHFS placed the boys with Carroll and they had been placed by CHFS for several years.

At that point, Miller testified she had custody of the boys from October 2007 until October 2012. With slight contradiction, she then stated she had requested relief due to her husband's illness on July 23, 2012, and CHFS had placed the boys with Carroll shortly thereafter. Thus, Miller did not have the boys a full five years. Carroll testified next, confirming CHFS had temporarily placed the boys with him on July 23, 2012, and they remained with him until February 19, 2013, when they returned to their father, Cherry. The court found the statutory requirements had been satisfied, designated Carroll a *de facto* custodian, and said a date would be set for the custody trial when the court's calendar became available.

On August 13, 2013, the court entered Findings of Fact, Conclusions of Law, Order Overruling [Cherry's] Motion to Dismiss, and Order Sustaining, in part, [Car-

roll's] Verified Motion for Determination of *De Facto* Custodian and Custody. The order said an evidentiary hearing would be scheduled "on a date mutually convenient to the parties." The order did not contain finality language. No appeal was taken.

Until 2015, little movement occurred. Carroll and Cherry requested each other submit to drug testing (hair follicle tests), an attempted mediation yielded no resolution, and Cherry switched attorneys. At some point, Cherry was arrested for being a convicted felon in possession of a handgun prompting removal of the children from his home. In the wake of Cherry's arrest, CHFS did not place the children with Carroll which rankled Carroll. On January 13, 2014, Carroll moved for a hearing on custody, referencing a motion for immediate custody he had filed on November 12, 2013, but no such motion appears in the record provided to us. No hearing occurred.

Finally, on December 7, 2015, trial was held on the issue of custody. Carroll testified first, asking for joint custody with him being named the primary residential custodian. If awarded custody, Carroll said he would involve the parents in the boys' lives, but expressed concern about Cherry and drug use.

Cherry testified he and Carroll have never had a good relationship and do not communicate with one another. Cherry said he believes the custody tug-of-war has adversely affected his three sons, causing them to play him against Carroll. Cherry said he wants to retain custody and raise his children, but wants them to have a relationship with Carroll and his family. While Cherry opposed joint custody, he would agree to Carroll having visitation with the boys every other weekend, but

asked that the midweek visit be discontinued.

The last witness to testify was a longtime CHFS investigator familiar with both Carroll and Cherry who had been unable to substantiate any claims. She stated her observation of Cherry interacting with his sons was "secure, healthy and appropriate." She expressed great concern about Carroll's—not Cherry's—past drug abuse. When the proof ended, the court took the matter under advisement.

On February 11, 2016, the court entered Findings of Fact, Conclusions of Law and Judgment. After noting Carroll had been designated a *de facto* custodian, the court awarded joint legal custody of all three boys to Carroll and Cherry, designated Carroll the primary residential custodian, set forth a timesharing schedule for Carroll and Cherry, and ordered Taylor to have no contact with the children. The order stated it was "final and appealable[.]" On March 4, 2016, Cherry filed a notice of appeal from the judgment entered February 11, 2016, as well as the judgment entered June 17, 2013.

## ANALYSIS

When reviewing a child custody determination, we set aside findings of fact only when clearly erroneous. *Reichle v. Reichle*, 719 S.W.2d 442 (Ky. 1986); CR [3] 52.01. We review questions of law *de novo*. *Brewick v. Brewick*, 121 S.W.3d 524, 526 (Ky. App. 2003). This case will turn on the trial court's application of the law to the facts.

We begin with whether this appeal is properly before us—a question raised by Carroll who maintains appeal of his *de facto* custodian status should have been pursued in July 2013—within thirty days of judgment being served pursuant to CR

**3.** Kentucky Rules of Civil Procedure.

73.02(1)—not March 2016, after custody was decided. We disagree.

███ Determination of a request for *de facto* custodian status does not strip "a party of a right in such a manner as to remove from the court the power to return the parties to their original condition." *Druen v. Miller*, 357 S.W.3d 547, 549 (Ky. App. 2011) (citation omitted). Therefore, it is interlocutory. With very few and only very specific exceptions—none applicable here—an interlocutory order is not subject to appeal. *Id.* Had Cherry attempted to challenge Carroll's *de facto* custodian status as soon as it was entered, as was the scenario in *Druen*, the appeal would have been dismissed for lack of appellate jurisdiction. This case is properly before us because it challenges a final judgment determining custody. It just happens the primary basis of Cherry's challenge is whether Carroll had standing to seek—and ultimately obtain—custody. Furthermore, the judgment deciding custody contained finality language; the judgment designating Carroll a *de facto* custodian did not.

Having determined the appeal is ripe for our consideration, we now address who is statutorily eligible to be designated a *de facto* custodian. The matter is governed by KRS 403.270(1)(a) which reads:

(1) (a) As used in this chapter and KRS 405.020, unless the context requires otherwise, "de facto custodian" means a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age and for a period of one (1) year or more if the child is three (3) years of age or older or has been placed by the Department for Community Based Services. Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period.

The statute sets forth a number of requirements for *de facto* custodian status: (a) proof by clear and convincing evidence; (b) primary caregiver; (c) financial supporter; and (d) residence for a requisite period of time, depending on the age of the child or whether the child was placed by CHFS. With respect to this latter scenario—a child placed by the CHFS—a plain reading of KRS 403.270(1)(a) requires that the child, regardless of age, who is placed by CHFS reside with the custodian for a period of a year or more before *de facto* custodian status may be sought. *See J.G. v. J.C.*, 285 S.W.3d 766, 767–68 (Ky. App. 2009) (court holding placement by CHFS of child under three years of age for ten months insufficient to give rise to *de facto* custodian status). This reading of the statute is consistent with Graham & Keller, *Kentucky Practice—Domestic Relations* § 21:29.

███ In this case, each of the three children had been placed with Carroll by CHFS. Therefore, pursuant to KRS 403.270(1)(a), the children had to reside with Carroll at least one year before he could properly petition for *de facto* custodian status. Indisputably, the children resided in his home less than seven months.

We also reject Carroll's theory that the nearly seven months the children were placed with him could simply be tacked on to the nearly five years the children lived with his sister to satisfy the residency requirement of a year or more. To read the statute this way would require us to rewrite it—something we are not authorized to do and will not do. Carroll has

cited, and we have found, no authority in support of his position.

KRS 403.270(1)(a) speaks in terms of a *de facto* custodian being "a person," although a husband and wife will be considered one unit in terms of being the child's financial provider. *S.S. v. Commonwealth*, 372 S.W.3d 445, 448 (Ky. App. 2012). Otherwise, the statute contemplates residency of one year or more with the same person who is the primary caregiver and financial supporter—not a month here and a month there in the care of different people. The phrase "period of one (1) year or more" must be read to mean twelve *continuous* months—or more—not multiple periods of time adding up to or exceeding twelve months in the care of different people. The residency provision is not a stand-alone requirement. During that time, the prospective *de facto* custodian must be the child's primary caregiver and financial provider. Just as Carroll would not be responsible for events occurring while the children were in his sister's care, neither could he claim credit for the nearly five years they resided in his sister's home. Carroll had to satisfy the statutory requirements—including residency of a year or more—on his own and that he failed to do.

For the reasons expressed above, the two judgments entered by the Wayne Circuit Court are reversed and remanded for an appropriate order. Based on the evidence before us, Carroll cannot qualify as a *de facto* custodian and therefore, has no standing to seek custody of Cherry's three sons.

ALL CONCUR.