RENDERED: NOVEMBER 20, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1711-MR

SHARON KINGCADE                                                          APPELLANT

v.          APPEAL FROM MCCRACKEN FAMILY COURT
            HONORABLE DEANNA WISE HENSCHEL, JUDGE
            ACTION NO. 19-CI-00757

SHELBIE SHERWOOD                                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: Sharon Kingcade appeals from an order of the McCracken

Family Court denying her motion to be declared the *de facto* custodian of Shelbie

Sherwood's child. We affirm.

## FACTS

Kingcade is the mother of Shelbie Sherwood and the grandmother of

Sherwood's child, born in February 2018. Both Sherwood and the child lived in

Kingcade's home until January 2019, when Sherwood moved out. From January to August 2019, the child remained in Kingcade's home while Sherwood moved her residence several times and went through some short-lasting relationships with various men. Sherwood visited her child with some frequency, provided some clothing and other items for the child, and scheduled and attended some medical and therapy appointments for the child. Sherwood allegedly has a mental illness.

In August 2019, Kingcade filed a petition for custody of the child in which she asserted she was the child's *de facto* custodian and that since the child's birth, the child had resided with her and she had been the child's sole caregiver and financial supporter. She also filed a motion for a temporary injunction to prevent Sherwood from taking the child from Kingcade's home when Sherwood moved in with a boyfriend. Kingcade alleged that Sherwood was not taking medication for mental illness, and that Sherwood had been involved with men who used illegal drugs and who were physically abusive. The trial court denied the request for a temporary injunction, finding no emergency warranting such relief in the absence of allegations that the child's needs were not being met.

The order denying injunctive relief also stated that the court would entertain motions to be declared *de facto* custodian and for temporary custody after Sherwood was served with the petition. Kingcade then filed these specified motions, which were set for a hearing on October 3rd. Next, Kingcade filed a

motion for immediate visitation pending the hearing. According to docket notes, the motion for immediate visitation was passed from an earlier date until October 3rd, and the trial court planned to address issues of standing before addressing issues of visitation.

The trial court began the October 3rd hearing by clarifying the purpose of the hearing: to determine whether Kingcade qualified as a *de facto* custodian. If Kingcade was found to be a *de facto* custodian, the trial court would then enter a temporary custody order. But if not, the trial court would not need to do anything further at that point.

After hearing evidence, the trial court took the matter under advisement to consider the evidence in this case and in an associated dependency, neglect, and abuse (DNA) case regarding the child.[1] A few weeks later, it issued a written order denying Kingcade's motion to be declared the child's *de facto* custodian and stating that "[a]ll terms of previous Orders shall remain in full force and effect unless modified herein."

---

[1] The record from the dependency, neglect, and abuse (DNA) case was not provided to us. According to the trial court's findings in the instant case, "the Court found that the child was at risk of harm [in the DNA case] but left the child in [Sherwood's] care as a least restrictive alternative to removal. DCBS [Department of Child Based Services] has been involved and currently does not believe child is at risk of harm in [Sherwood's] care." (Record (R.) p. 28, p. 2 of trial court Order Regarding *De Facto* Status in appendix of Appellant's brief.) According to the parties' briefs, a temporary removal hearing and an adjudication in the DNA case occurred on separate dates in September 2019.

A few days after the trial court issued its order denying Kingcade *de facto* custodian status, Kingcade filed a motion for grandparent visitation under the same case number as her petition for custody. And then Kingcade filed a timely notice of her appeal of the order denying her *de facto* custodian status.

The record provided to us ends with the notice of appeal. But we take judicial notice that CourtNet indicates additional filings in the same trial court case following the notice of appeal—including an agreed order entered regarding custody and an order regarding grandparent visitation, although the documents are not accessible for our review.

## ANALYSIS

Before addressing the merits of this appeal, we note Sherwood's argument that the appeal should be dismissed as being from an interlocutory order. She asserts that orders determining whether a person qualifies as a *de facto* custodian are interlocutory and non-appealable, citing Kentucky Rules of Civil Procedure (CR) 54.01, *Druen v. Miller*, 357 S.W.3d 547 (Ky. App. 2011) and *Cherry v. Carroll*, 507 S.W.3d 23 (Ky. App. 2016).

Sherwood also notes the different motions filed, the trial court's not dismissing the action altogether, and the trial court's continuing to address other matters after its order denying Kingcade *de facto* custodian status. So, she argues that the order denying Kingcade *de facto* custodian status did not adjudicate all the

-4-

parties' rights in the action. And she notes that the trial court's order did not contain the sort of language that would make it final under CR 54.02. For example, the order does not state that it was final or that there was no just reason for delay.

Sherwood makes good arguments that the trial court's order does not appear final on its face or in light of events occurring after the order's entry. She also aptly cites precedent which might appear to indicate that any order resolving whether a nonparent has *de facto* custodian status is interlocutory. *See Cherry*, 507 S.W.3d at 27 (concluding that "determination of a request for *de facto* custodian status" is interlocutory and stating that an immediate appeal of an order **granting** a nonparent *de facto* custodian status would have been dismissed for lack of appellate jurisdiction—instead, grant of *de facto* custodian status should be reviewed on appeal after entry of a final custody judgment). But we must note an important distinction between this case and those cited by Sherwood—the nonparent party in both *Druen* and *Cherry* was found to have standing to seek custody so that the custody proceeding could proceed to a final judgment. *See generally Druen*, 357 S.W.3d at 548; *Cherry*, 507 S.W.3d at 25.[2]

---

[2] The trial court in *Druen* found the nonparent party to have standing based on allegations of waiver of parental rights in the amended petition and, therefore, denied a motion to dismiss for lack of standing. The nonparent party had also alleged she was a *de facto* custodian in her original custody petition, but our appellate Opinion does not discuss whether the trial court found the nonparent party to be a *de facto* custodian. *See Druen*, 357 S.W.3d at 548. We dismissed the

-5-

Unlike the nonparent parties in *Druen* and *Cherry*, however, Kingcade did not prevail on the only basis for standing stated in her custody petition—her allegations of being the child's *de facto* custodian. *See generally* Kentucky Revised Statutes (KRS) 403.270(1). Thus, the trial court's determination that she was not the *de facto* custodian (and therefore lacked standing) meant that she could not prevail on the only claim for relief stated in her petition—her request to obtain custody of the child. Since it meant she could not prevail on the sole claim in her action, the trial court's order denying her *de facto* custodian status effectively adjudicated all the parties' rights in the custody proceeding. Thus, under these facts and for purposes of this appeal only, we will assume *arguendo* that the trial court's order was final and appealable under CR 54.01 and reach the merits of the trial court's determination that Sherwood did not qualify as a *de facto* custodian.

## STANDARD OF REVIEW

We review a trial court's factual findings in a custody proceeding for clear error (meaning they shall not be set aside if supported by substantial evidence); however, we review the trial court's application of the law *de novo*. *Ball v. Tatum*, 373 S.W.3d 458, 463-64 (Ky. App. 2012).

---

appeal from the order denying the motion to dismiss, concluding the order was interlocutory and non-appealable. *Id.* at 548-49.

-6-

KRS 403.270(1)(b) provides that a person whom a trial court has found by clear and convincing evidence to be a *de facto* custodian has the same standing as a parent in custody matters under that statute and specified others.[3] And KRS 403.270(1)(a) provides in pertinent part that a *de facto* custodian is one shown by clear and convincing evidence "to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age . . . ."

But even where a nonparent provides extensive caregiving and financial support to a child, one does not become a *de facto* custodian under Kentucky case law when co-parenting with the parent and not acting in the parent's place. *See*, *e.g.*, *Mullins v. Picklesimer*, 317 S.W.3d 569, 574 (Ky. 2010); *Brumfield v. Stinson*, 368 S.W.3d 116, 118 (Ky. App. 2012).

The trial court ultimately denied Kingcade's request to be declared *de facto* custodian based on evidence showing that she co-parented along with Sherwood rather than standing in Sherwood's place, citing precedent including *Mullins v. Picklesimer*. But before ultimately concluding that Kingcade was not the child's *de facto* custodian the trial court referred to Kingcade as "the primary caretaker and provider of the child" (R. p. 29)—thus using some of the same

---

[3] KRS 403.270(1)(b) also provides that a *de facto* custodian has the same standing as a parent in child custody matters under KRS 403.280, 403.340, 403.350, 403.822, and 405.020.

language used to define the term *de facto* custodian in KRS 403.270(1)(a). Nonetheless, the trial court did **not** make a finding that Kingcade showed by clear and convincing evidence that she was the primary caregiver and financial supporter of the less-than-three-year-old child for six months or more. *See* KRS 403.270(1)(a)-(b).

Kingcade argues that the trial court erred in finding that she parented the child alongside Sherwood rather than standing in Sherwood's place as parent. She points to Sherwood's admitting that the child lived with Kingcade from January to August 2019 while Sherwood lived in several different places and to evidence of GPS records showing that Sherwood was present at Kingcade's home during this period less than 20 percent of the time. She also emphasizes her own testimony that Sherwood's visits were often less than an hour long and involved just "hanging out" while Kingcade provided all care such as feeding and bathing.

While there seems to be no dispute that Kingcade provided the lion's share of care and financial support for a substantial time, we nonetheless conclude that there was substantial evidence to support the trial court's finding of "co-parenting" rather than Kingcade standing in Sherwood's place as parent. For example, some evidence shows Sherwood providing some food and clothing for the child, scheduling and attending medical and therapy appointments, and frequently checking in on the child for much of the January to August 2019 period.

We cannot say that the trial court's factual finding of co-parenting was not supported by any substantial evidence and, thus, clearly erroneous.

Without getting into a belabored discussion of the individual facts of each case, there are certainly distinctions between this case and cases discussed by the trial court, particularly *Kruger v. Hamm*, No. 2018-CA-000553-ME, 2019 WL 2063922 (Ky. App. May 10, 2019) (unpublished).[4] The trial court cited our Opinion in *Kruger*, in which we reversed the trial court's determination that the nonparent Hamms qualified as *de facto* custodians despite their providing child care and financial support. The trial court quoted our statement in *Kruger* that the mother at least co-parented based on evidence of her seeing the child every other day, providing baby formula and clothing, and going to the child's medical appointments. *See id.* at *9. Although Sherwood similarly saw her child frequently (often daily), attended medical appointments, and provided some food and clothes, in many respects the cases differed—including Kruger's working full-time to support her children, and her entering into legally dubious agreements with the Hamms (non-relatives) by which the Hamms purported to obtain joint custody of her children. *See generally id.* at *1-4.

---

[4] When the trial court herein rendered its order, our Opinion in *Kruger v. Hamm* had been designated for publication and was not yet final. But on December 13, 2019, the Kentucky Supreme Court ordered the Opinion de-published while denying discretionary review. We do not rely on this unpublished Opinion as precedent, but simply discuss it because the trial court relied on it and Kingcade alleges error in this regard.

More similar to the instant case are published cases in which grandparents provided a great deal of child care and financial support, but the grandparents were held not to qualify as *de facto* custodians because of the parent's continuing involvement and not allowing the grandparents to stand in the parent's place. *See Chadwick v. Flora*, 488 S.W.3d 640, 644-45 (Ky. App. 2016) (trial court properly found grandmother not to be a *de facto* custodian despite previously helping her then-teenage daughter with child care and financial support, including a time when daughter and grandchild lived with her); *Brumfield*, 368 S.W.3d at 119 (trial court erred in finding grandparents of child's half-sibling to be child's *de facto* custodians considering trial court's findings of a co-parenting arrangement between them and mother). *But see Ball*, 373 S.W.3d at 464-65 (no reversible error in trial court determining grandparents had *de facto* custodian status considering conflicting evidence, including some indicating mother played no more than a minimal role in caring for child and thus allowed grandparents to act in her stead by providing most child care and financial support). In short, our published cases recognize that even generous contributions of child care and financial support from a grandparent do not always mean that a grandparent has *de facto* custodian status—especially where a parent remains substantially involved and does not cede his/her unique parental decision-making authority.

"[P]arents have a basic human right to direct the upbringing of their children, which is so fundamental that it warrants constitutional protection." *Jones v. Jones*, 510 S.W.3d 845, 849 (Ky. App. 2017) (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)). Thus, our precedent somewhat narrowly construes the language of KRS 403.270(1) and only allows for a nonparent to be recognized as a *de facto* custodian and accorded the same standing as a parent in limited circumstances:

> A *de facto* custodian is a person who proves by clear and convincing evidence to have been a child's primary caregiver and financial supporter, for a period of six months (if the child is under three years old) or one year (for older children). KRS 403.270(1). This language has been interpreted to mean that in order to be a *de facto* custodian, the nonparent must not simply be *a* primary caregiver, but must, in fact, be *the* primary caregiver. *Consalvi v. Cawood*, 63 S.W.3d 195, 197-98 (Ky. App. 2001), *overruled on other grounds by Boone v. Ballinger*, 228 S.W.3d 1 (Ky. App. 2007).

> Kentucky Courts have also repeatedly held that when a nonparent shares the parenting responsibilities with a natural parent, the nonparent cannot, as a matter of law, acquire *de facto* custodian status. *Mullins v. Picklesimer*, 317 S.W.3d 569, 574 (Ky. 2010) ("[P]arenting the child alongside the natural parent does not meet the *de facto* custodian standard."); *Brumfield v. Stinson*, 368 S.W.3d 116, 118 (Ky. App. 2012) ("[O]ur law is clear that even if a nonparent provides care and/or financial support for a child, if such is in conjunction with a natural parent, the nonparent will not qualify as a *de facto* custodian."); *Boone*[,] 228 S.W.3d at 8 (KRS 403.270 was "unavailable" to non-parent caretaker

-11-

because care was provided "alongside the natural parent").

*Jones*, 510 S.W.3d at 849.

Here, while the trial court referred to Kingcade as being "the primary caregiver and provider" for the child instead of just "a primary caregiver," the trial court also clearly found that Sherwood shared somewhat in parental responsibilities. Specifically, the trial court found that Sherwood had frequent contact with the child, participated in the child's medical appointments and therapy, and at times worked in a family member's consignment store where she could pick out and provide clothes for the child. The trial court also found that Sherwood provided some financial support, "albeit through state benefits and learned benefits programs" including WIC food and food stamps, and "took the baby to work with her sometimes while [Kingcade] worked." The trial court also noted both Sherwood's testimony that she provided diapers earned through a community program and Kingcade's denial that Sherwood did so.

While the trial court found that Sherwood relied heavily on others for support and "her ability to make good decisions for herself and her child is in question," it also noted that Sherwood "had the wisdom to leave the baby in her mother's stable home" while Sherwood underwent rough times in which she moved frequently. Thus, the trial court recognized that Sherwood did not totally abdicate her parental responsibilities even though she previously accepted

-12-

Kingcade's providing much of the day-to-day caretaking and financial support for the child.  *See Mullins*, 317 S.W.3d at 577 (distinguishing between nonparents clearly held out to be parents and to provide parental care from grandparents, babysitters, and others who provide child care but are not intended by the parents to do so "in the capacity of another parent").  Like the young mother in another case, Sherwood at least occasionally cared for the child herself when the grandmother could not, and she sought out and received government benefits for her child.  *See Chadwick*, 488 S.W.3d at 645.  Thus, there was at least some evidence of Sherwood taking action to make sure her child received proper care and support.

Perhaps there was some confusing language in the trial court's decision.  Perhaps some published cases were more factually similar than the later de-published one it quoted.  Yet the trial court's decision was consistent with our precedent not recognizing nonparents as *de facto* custodians for sharing parenting with parents rather than acting in their stead.  Thus, we find no reversible error upon a *de novo* review of its application of the law.

As its application of the law was consistent with precedent and its findings of fact were not clearly erroneous, we cannot disturb the trial court's order denying Kingcade *de facto* custodian status.[5]

## CONCLUSION

For the foregoing reasons, the judgment of the McCracken Family Court is hereby AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:

Heather L. Jones
Paducah, Kentucky

BRIEF FOR APPELLEE:

Angela Troutman
Paducah, Kentucky

---

[5] As the trial court here only considered whether Kingcade qualified as a *de facto* custodian, we express no opinion on whether Kingcade could establish alternative grounds for standing. *See*, *e.g.*, *Mullins*, 317 S.W.3d at 578-79 (although nonparent did not qualify as *de facto* custodian, trial court properly determined that nonparent had standing based on other grounds).