RENDERED: JULY 12, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2023-CA-0984-MR

MAXWELL RIGDON AND
MARTINA RIGDON                                                    APPELLANTS


                    APPEAL FROM HARDIN CIRCUIT COURT
v.              HONORABLE DAWN LONNEMAN BLAIR, JUDGE
                        ACTION NO. 22-CI-01183


JEFFREY ENGLAND AND BRENDA
ENGLAND                                                            APPELLEES


OPINION
REVERSING
AND REMANDING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; COMBS AND LAMBERT, JUDGES.

COMBS, JUDGE: This appeal involves a petition for *de facto* custodianship. The

Appellants, Maxwell Rigdon and Martina Ridgon, are married and have four

children between them -- three biological daughters and Martina's son from a

previous relationship. This matter concerns the Rigdons' two younger daughters,

A.P.R., born in 2015; and A.R.M.R., born in 2016. The Appellees are Brenda

England and Jeffrey England, the paternal grandmother and step-grandfather.

The Englands filed a petition to be declared *de facto* custodians of the

two girls. The family court determined that the Englands qualified as *de facto*

custodians and subsequently awarded the Englands and the Rigdons joint legal

custody of A.P.R. and A.R.M.R. On appeal, the Rigdons contend that the trial

court erred in determining that the Englands qualified as *de facto* custodians. After

our review, we reverse and remand.

A person claiming to be a *de facto* custodian may petition a court for

legal custody of a child. KRS[1] 405.020(3). *De facto* custodian status is governed

by KRS 403.270. "The statute sets forth a number of requirements for *de facto*

custodian status: (a) proof by clear and convincing evidence; (b) primary

caregiver; (c) financial supporter; and (d) residence for a requisite period of time

depending on the age of the child . . . ." *Cherry v. Carroll*, 507 S.W.3d 23, 27 (Ky.

App. 2016). "Granting someone *de facto* custodian status gives that person 'the

same standing in custody matters that is given to each parent.' KRS

403.270(1)(b)." *Meinders v. Middleton*, 572 S.W.3d 52, 57 (Ky. 2019).

> Before the family court may find that a caregiver has
> become the "*de facto* custodian" entitled to be placed on
> the same footing as a biological parent in a custody
> proceeding, the court must determine that the biological

---

[1] Kentucky Revised Statutes.

parent has abdicated the role of primary caregiver and financial supporter of the child for the required period of time. *London v. Collins*, 242 S.W.3d 351 (Ky. App. 2007). In other words, "one must literally stand in the place of the natural parent to qualify as a *de facto* custodian." *Consalvi v. Cawood*, 63 S.W.3d 195, 198 (Ky. App. 2001), *abrogated on other grounds by Moore* [*v. Asente*, 110 S.W.3d 336 (Ky. 2003)].

. . .

[O]ur law is clear that even if a nonparent provides care and/or financial support for a child, if such is in conjunction with a natural parent, the nonparent will not qualify as a *de facto* custodian. *Boone v. Ballinger*, 228 S.W.3d 1 (Ky. App. 2007).

*Brumfield v. Stinson*, 368 S.W.3d 116, 118 (Ky. App. 2012).

With that precedential commentary in mind, we turn to the matter before us. On August 29, 2022, Brenda England and Jeffrey England filed their petition for *de facto* custody in Hardin Circuit Court, Family Division, seeking sole custody. The petition states that the Englands are the paternal grandparents of A.P.R. (born in 2015) and A.R.M.R. (born in 2016), whose natural parents are Maxwell and Martina Rigdon. The Englands alleged that the children had resided with them "for the aggregate period of one (1) year or more . . . within the last two (2) years." The Englands further alleged that "pursuant to KRS 403.270(1), . . . they have been the primary caregivers specifically for, and financial supporters of, the minor children herein for the necessary statutory period, specifically for the aggregate period of at least one (1) year of the past two (2) years . . . ."

-3-

On September 13, 2022, the family court conducted a hearing on the *de facto* petition. On September 21, 2022, the court entered Findings of Fact, Conclusions of Law, and Order Regarding *De facto* Custody as follows in relevant part:

> The Respondent, Maxwell Rigdon, is the son of Petitioner, Brenda England. The Respondents have four children living in their home at the present time. . . . Only two of the Rigdon's [*sic*] children are the subject matter of this action, namely A.P.R. and A.R.M.R. The Petitioners are the grandparents to A.P.R. and A.R.M.R. . . . Petitioners . . . allege to be the primary caregivers and financial supporters of these two children and request to be declared *de facto* custodians of A.P.R. and A.R.M.R.
>
> . . .
>
> A.P.R. and A.R.M.R. are both older than three years old. Thus, the requisite time period is a one year period. As [KRS 403.270(1)(a)] now states, this one year period can be an aggregate of time which has occurred within the last two years before the petition was filed. **The petition was filed on August 29, 2022, therefore, the Court is being asked to determine if the [Englands] qualify as *de facto* custodians for the time period of August 29, 2020 to August 29, 2022**. **The standard of proof is one of clear and convincing evidence**.
>
> The Respondents [Parents] argue that . . . the ability to aggregate time should not apply prior to June 29, 2021, as the statute in effect up until that time did not contain the aggregate language.

(Emphasis added.)

-4-

Citing KRS 446.080 and general rules of statutory construction, the family court stated:

> In the very text of the statute, the legislature intended to utilize the two years prior to the passage of this statute as the time frame within which to qualify as a *de facto* custodian. Thus, the statute on its very face clearly evidences the legislature's intent to include the two years prior to the passage of the statute and the aggregate period within that two years.

The family court found that the Englands had the children for the following time periods -- based upon calendars which Ms. England had kept:

September 2020-December 2020: 110 nights

2021: 333 nights

2022: 204 nights

The family court found Ms. England's calendars reliable because they were "kept in real time." By contrast, Ms. Rigdon, the children's mother, had attempted to recreate her calendars in retrospect. The family court explained that "the ultimate question at hand is whether the Rigdons abdicated their role as primary caregivers and financial supporter of the children." The family court concluded that the Englands had proven that they had been both the primary caregiver and primary financial supporters for the children for an aggregate period of time of one year or more prior to the filing of this petition. The family court ordered that the Englands be adjudged *de facto* custodians of A.P.R. and A.R.M.R.

On August 4, 2023, following a final hearing, the family court entered Findings of Fact, Conclusions of Law, and Judgment, reciting as follows:

> This Court has previously entered an order determining that the [Englands] qualify as *de facto* custodians of the two children, A.P.R. and A.R.M.R. The findings of fact contained within that order are hereby incorporated herein on the issue of *de facto* custody. Further, the Court did not hear any additional evidence during the final hearing which would have contradicted this prior ruling . . . .

The family court ordered that "[t]he Petitioners, Jeffrey and Brenda England, and the Respondents, Maxwell and Martina Rigdon, are hereby awarded joint legal custody of the two children, A.P.R. and A.R.M.R."

The Ridgons appeal. They contend that the trial court erred when it determined from the applicable law and evidence that the Englands qualified as *de facto* custodians of the two children. Specifically, the Rigdons argue: (1) that KRS 403.270, as amended, was not made retroactive; thus, any time that the children resided with the Englands prior to the effective date of the statute's amendment on June 29, 2021, cannot be aggregated with time accruing after that date; and (2) that the *de facto* custodian statute is **not** applicable because during the period of time that the children were with the Englands, they were still being co-parented by their natural parents, citing *Burgess v. Chase*, 629 S.W.3d 826 (Ky. App. 2021) and *Boone v. Ballinger*, 228 S.W.3d 1 (Ky. App. 2007) (cases holding that even if a nonparent provides care and/or financial support for a child, if it is in

-6-

conjunction with a natural parent, the nonparent will not qualify as a *de facto* custodian).

"The construction and application of statutes is a matter of law and may be reviewed de novo." *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth Transp. Cabinet*, 983 S.W.2d 488, 490 (Ky. 1998).

Amended effective June 29, 2021, KRS 403.270(1)(a) provides in relevant part:

> As used in this chapter and KRS 405.020, unless the context requires otherwise, "*de facto* custodian" means a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who **within the last two (2) years has resided with the person** . . . **for an aggregate period of one (1) year or more if the child is three (3) years of age or older** . . . .

(Emphasis added.) Before the statute was amended to allow aggregate periods of time, "the period of time required to qualify for *de facto* custodian status under KRS 403.270 [had to] be one continuous period of time." *Meinders*, 572 S.W.3d at 57. The previous provision of KRS 403.270(1)(a) that was in effect through June 28, 2021, provided as follows:

> "[D]e facto custodian" means a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child **who has resided with the person** . . . **for a period of one (1) year or more if the child is three (3) years of age of older** . . . .

(Emphasis added.)

As set forth above, the family court determined that the Englands qualified as *de facto* custodians by including aggregated periods of time that occurred **before** the statute was amended effective June 29, 2021. The Englands concede in their Appellees' brief that "[a]t the time of the hearing, [they] had not been primary caregivers for [one] (1) continuous year, and the trial court had to rely on parenting time that had taken place prior to the statute's amendment."

KRS 446.080(3) mandates that "[n]o statute shall be construed to be retroactive, unless expressly so declared." The amendment to KRS 403.270 does not expressly declare that it has retroactive application. In *Commonwealth Department of Agriculture v. Vinson*, 30 S.W.3d 162 (Ky. 2000), our Supreme Court explained as follows:

> Kentucky law prohibits the amended version of a statute from being applied retroactively to events which occurred prior to the effective date of the amendment unless the amendment expressly provides for retroactive application. KRS 446.080(3). *Kentucky Industrial Utility Customers, Inc. v. Kentucky Utilities Company*, Ky., 983 S.W.2d 493 (1998). This is a very fundamental principle of statutory construction in Kentucky. The courts have consistently upheld this admonition and have declared there is a strong presumption that statutes operate prospectively **and that retroactive application of statutes will be approved only if it is absolutely certain the legislature intended such a result**. This is particularly true when the legislation is substantive and not remedial, and new rights and new duties are created.

-8-

. . .

> Amendments which change and redefine the out-of-court rights, obligations and duties of persons in their transactions with others are considered to be changes in substantive law and come within the rule that statutory amendments cannot be applied retroactively to events which occurred prior to the effective date of the amendment.

*Id.* at 168-69 (emphasis added).

The amendment which was at issue in *Vinson* "changed the causation and weight of evidence components as to what an employee is required to prove successfully to support a claim under the [Whistleblower] Act. The amendment also required a new burden of proof from the employer in order to successfully defend a claim under the law." *Id.* at 169. Our Supreme Court held that "[t]he changes in causation and weight of evidence were changes in substantive law." *Id.* It also held that "[t]he change in the burden of proof was also a change in substantive law . . . . The amended version of the statute clearly provides for new legal consequences as a result of certain types of employer conduct which did not have any legal significance prior to amendment of the statutes." *Id.* Amendments which give past conduct new substantive legal consequences cannot be applied retroactively and come within the rule against retroactive legislation. *Moore v. Stills*, 307 S.W.3d 71, 80-81 (Ky. 2010).

*Meinders*, *supra*, dealt with the pre-amended version of KRS 403.270 and addressed the issue of whether the time period required to gain *de facto* custodian status could be aggregated or whether it had to be continuous. Our Supreme Court held that the pre-amendment version of 403.270 did **not** allow aggregation and explained that:

> . . . to allow a claimant to aggregate periods of time would undermine the purpose of the statute. Granting someone *de facto* custodian status gives that person "the same standing in custody matters that is given to each parent." KRS 403.270(1)(b). "[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Therefore, a process that puts a third party on equal footing with a parent is not one to be taken lightly. It is a high burden, and rightfully so. **To allow a third party to aggregate periods of time to add up to . . . a year . . . would drastically lower the burden of proof in comparison to proving the child lived with them continuously for the requisite time**.

*Meinders*, 572 S.W.3d at 57 (emphasis added).

We conclude that the amendment to KRS 403.270(1)(a) allowing a third party to aggregate periods of time to qualify for *de facto* custodian status is substantive. It changes the burden of proof and gives past conduct new substantive legal consequences. Thus, the family court erred in considering any aggregated periods of time that occurred before the date that the statute was amended on June 29, 2021 -- not only as to the time that each of the children resided with the

-10-

Englands, but *also* as it pertains to the issue of whether the Englands were the primary caregivers and primary financial supporters. The provisions of KRS 403.270 "are not triggered unless the biological parent has abdicated the role of primary caregiver and primary financial supporter to the person who claims to be the *de facto* custodian **for the required period of time**." *London v. Collins*, 242 S.W.3d 351, 358-59 (Ky. App. 2007) (emphasis added).

Although our conclusion that KRS 403.270(1)(a) is not retroactive in effect is dispositive of the outcome of this case, more importantly we hold that that statute should never have been invoked at all under the circumstances of this case. We agree with the second issue raised by the Rigdons; *i.e.*, that they **never abdicated** their role as parents. Mrs. Rigdon was employed while also attending nursing school during the period of time that the Englands "volunteered" their assistance with the two younger children. The computation of days and dollars alone by the Englands does not suffice to vitiate the primacy of parenting maintained by the Rigdons.

The entire record was not sent to us initially as required by our Rules of Appellate Procedure. (RAP 24). We requested it and waited for it, and we carefully reviewed it. The record reveals ample evidence that the Rigdons actively parented the girls on all matters ranging from clothing to educational programs -- and that they experienced resistance from the Englands on decision-making

-11-

regarding the children. As an example, we note that while the children had clothes at home, they were often required to "change clothes" to something more appropriate upon arriving at the Englands' residence. Mrs. Rigdon expressed an educational choice that conflicted with a proposal suggested by Mrs. England -- mere weeks before the petition for *de facto* custodianship was filed -- that arguably might have served as a catalyst for the filing.

The act of "volunteering help" essentially morphed into an assertion of the right to undermine the fundamental right of the Rigdons "to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66, 120 S. Ct. at 2060. *See also Walker v. Blair*, 382 S.W.3d 862 (Ky. 2012).

Substantial evidence in the record supports the fact that on some of the nights that the children spent with the Englands, they had also spent the days (or portions of the days) with the Rigdons. Yet, the Englands would "aggregate" and compute those nights as "their time," ignoring *in toto* the continually shifting and overlapping nature of where or how the time was actually spent. Thus, we find clear error and abuse of discretion in the court's disregard of the critically relevant reality of the continuous role of the Rigdons in parenting their children. Their acceptance of desperately needed assistance was erroneously construed to constitute abdication of their constitutionally protected primacy as parents, and the

award of *de facto* status to the Englands impermissibly impaired the parental rights of the Rigdons.

The protection that *de facto* custodianship affords to children was not intended to serve effectively as abdication by statute. Sadly, that appears to be the undeniable result of what happened in this case.

Therefore, we reverse and remand this matter to the Hardin Circuit Court for entry of an Order dissolving the *de facto* custodianship originally awarded to the Englands.

ALL CONCUR.

BRIEF FOR APPELLANTS:                BRIEF FOR APPELLEES:

G. William Bailey, Jr.                      Kevin A. Groseclose
Elizabethtown. Kentucky               Leitchfield. Kentucky