Amanda CHADWICK, Appellant,

v.

Emily FLORA and Michael Scott, Appellees.

NO. 2015–CA–001377–ME

Court of Appeals of Kentucky.

RENDERED: APRIL 29, 2016; 10:00 A.M.

Brief for Appellant: Nanci M. House, Winchester, Kentucky.

Brief for Appellees: David E. Higdon, Georgetown, Kentucky.

BEFORE: CLAYTON, KRAMER, and J. LAMBERT, JUDGES.

*OPINION*

CLAYTON, JUDGE:

Amanda Chadwick ("Grandmother") appeals from the Bourbon Circuit Court order that found Chadwick is not a *de facto* custodian of her grandchild and denied her custody and visitation. After careful review, we affirm and reverse in part and remand.

## FACTS

At 15 years of age, Emily Flora ("Mother") bore a son ("Child") on October 8, 2010. The father, Michael Scott ("Father"), was 18 years old. Mother resided with her father, Charlie Warner ("Grandfather"), when Child was born. Mother had been placed with Grandfather by social services because Grandmother "had her own issues." Four months later, Mother and Child moved in with Grandmother and resided there until April, 2013. Grandmother testified that she provided the majority of Child's care and financial

support during this time. Mother then moved out and kept Child at least twice a week through November, 2013. At that point, Grandmother asked Mother to keep Child while Grandmother recovered from her spouse's death.[1]

From Child's birth up through November, 2013, Mother controlled multiple aspects of Child's life. While living with Grandmother, Mother claimed Child as a dependent in order to receive KTAP, food stamps, child care reimbursement, medical cards, and tax benefits. Mother independently made choices regarding legal custody of Child. Mother was involved in multiple court proceedings acknowledging and affirming her role as the parent and custodian.

For example, after Mother left Grandmother's home, Mother filed a petition for custody against Father, listing no other persons as having any legal claims to Child. In August of 2013, Mother entered a written agreement with Father establishing a visitation schedule for Father to see Child. An agreed order was entered in Nicholas County in October 2013, awarding joint custody and equal timesharing of Child to Mother and Father. The agreement and order were sought and executed without Grandmother's consent or knowledge. In fact, the order did not mention Grandmother, instead designating a friend as having the authority to make medical decisions for Child if neither Mother nor Father was available. In spite of these orders and agreements, though, Father did not have a significant role in Child's care or support until November 2013. Mother, on the other hand, consistently participated in caring for Child from the date of his birth until November 2013.

In November 2013, while Child was in Mother's care, Child suffered an injury

---

1. Grandmother's brief states that it was her ex-spouse who died.

consistent with sexual abuse alleged to have been caused by Mother's live-in boyfriend. A Petition for Dependency, Neglect or Abuse was filed against Mother by the Department for Community Based Services in Nicholas County. As a result of those proceedings, Father was awarded permanent custody of Child, and Mother's contact was limited to therapeutic settings as recommended by Child's mental health practitioner.

Five months later, on March 31, 2014, Grandmother filed her Petition seeking Custody and Timesharing. Grandmother testified she did not petition for custody rights sooner because she believed Father would allow her to visit Child and be involved in his life. On February 3, 2015, Mother filed against Father a petition seeking custody. She listed no other person as having any legal claims to Child. The current case involves only Grandmother's petition.

Following the filing of Grandmother's petition, Father and Grandmother entered into a mediated agreement that allowed Grandmother to visit with Child once per week in a public place. The agreement was to last for two months. Shortly after the agreement was made, Father began refusing to allow Child to visit with Grandmother, claiming Child became "highly distraught by even the idea of going to see" Grandmother. Grandmother moved to hold Father in contempt for violating the agreed order.

At a hearing on the contempt motion and to determine whether Grandmother was a *de facto* custodian, Grandmother called numerous witnesses who testified about Grandmother's interactions with Child and the amount of care she provided. Father also testified, called witnesses, and cross-examined Grandmother's witnesses. The hearing spanned two days and lasted approximately three hours.

On August 10, 2015, the trial court entered an order finding Grandmother had standing to bring a petition, but nonetheless denying Grandmother's Petition because she was not a *de facto* custodian. The trial court found that Mother had been providing care and support for Child and had not abdicated her role as primary caregiver during the period that Child was living with Grandmother.

The trial court made an alternative finding that even if Grandmother were a *de facto* custodian, it is in Child's best interests to remain with his father because "... there was ample evidence that [Child] suffered trauma at the hands of his mother's paramour[,] that [the paramour] associates with [Grandmother], and that [Child] feels significant stress and fear when he is faced with reuniting with her." Furthermore, "[a]ccording to [Child's] counselor, he has also revealed some events that have [Grandmother] under investigation with DCBS."

Grandmother timely appealed. The case now stands submitted.

## STANDARD OF REVIEW

Appellate courts "defer to factual findings of the court as conclusive if they are not clearly erroneous and if they are supported by substantial evidence." *Spreacker v. Vaughn*, 397 S.W.3d 419, 421 (Ky. App.2012). " '[S]ubstantial evidence' is '[e]vidence that a reasonable mind would accept as adequate to support a conclusion' and evidence that, when 'taken alone or in light of all the evidence, ... has sufficient probative value to induce conviction in the minds of reasonable men.'" *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky.2003) (footnotes and citations omitted, alterations in original). A reviewing court should give "due regard" to the trial court's determination of witness credibility and the weight

of evidence, regardless of the conflicting evidence or the fact that a reviewing court would reach a contrary finding. *Id.*

The facts must then be applied to the law, and a "determination of the proper law to be applied to the facts is reviewed *de novo.*" *Allen v. Devine,* 178 S.W.3d 517, 524 (Ky.App.2005) (citing *Lindley v. Paducah Bank & Trust,* 114 S.W.3d 259, 263 (Ky.App.2002)).

## ISSUES

■ Initially we address Father's issue with Grandmother's standing to bring a petition for custody and/or visitation. Father argues that Grandmother lacked standing to bring the action because she was not a "person acting as a parent" as defined in Kentucky Revised Statutes (KRS) 403.800(13)(a). Pursuant to that statute, a person acting as a parent is someone other than the parent who "[h]as physical custody of the child or has had physical custody for a period of six (6) consecutive months, including any temporary absence, within one (1) year immediately before the commencement of a child custody proceeding[.]" We find Father's argument unavailing.

Grandmother testified she had predominant physical custody of Child up through the beginning of November, 2013. She filed her petition for custody at the end of March 2014. Physical custody under this statute "does not require exclusive care and exclusive supervision." *Mullins v. Picklesimer,* 317 S.W.3d 569, 575 (Ky. 2010). Performing traditional parenting responsibilities alongside another person "or on an equal time sharing basis" constitutes physical custody.

■ Here, Grandmother and Mother jointly exercised physical custody of Child up through November 2013. Accordingly, Grandmother had physical custody of Child for at least six months between March 2013, and March 2014. *See, e.g., Lambert v. Lambert,* 475 S.W.3d 646, 651 (Ky.App.2015) (non-parent who had physical custody of children for at least eight months prior to commencement of custody action had standing). We therefore find Grandmother had standing to bring the petition for custody because she had custody of Child for at least six of the twelve months immediately preceding the petition's filing.

■ We next turn to whether Grandmother is a *de facto* custodian. The trial court found Grandmother was not a *de facto* custodian because she was not Child's primary caregiver. We agree. KRS 403.270(1)(a) defines a *de facto* custodian as "a person who has been shown by clear and convincing evidence to have been *the* primary caregiver for, and financial supporter of, a child who has resided with the person for a period of . . . one (1) year or more if the child is three (3) years of age or older. . . ." (Emphasis added).

■ The phrase "*the* primary caregiver for, and financial supporter of" has consistently been interpreted to mean a singular caregiver—someone who is *the* primary provider for a minor child. *Consalvi v. Cawood,* 63 S.W.3d 195, 198 (Ky.App.2001), *abrogated on other grounds by Moore v. Asente,* 110 S.W.3d 336 (Ky.2003). *See also Mullins v. Picklesimer,* 317 S.W.3d 569, 573–574 (Ky.2010); *Brumfield v. Stinson,* 368 S.W.3d 116, 118 (Ky.App.2012). A grandparent who co-parents a child with the natural mother or father does not make the grandparent the primary caregiver. "It has been held that parenting the child alongside the natural parent does not meet the *de facto* custodian standard in KRS 403.270(1)(a)." *Mullins,* 317 S.W.3d at 574.

This reasoning is sound, especially in the instant case. Here, Mother was 15 years

old when she gave birth to Child. She was still in high school, and Grandmother wanted to see both Child and Mother succeed in life, so she did what any good, loving, and caring grandmother would do—she continued to care for her own child and her new grandchild. But her care did not supplant Mother's. Mother lived with Child for most of the time Grandmother helped care for Child. Mother sought and received government benefits for Child. Mother entered custody agreements and held herself out as the child's custodian throughout several court proceedings. And, when Grandmother had personal issues and could not care for Child, Child was in Mother's exclusive care.

Grandmother's supportive acts for both Mother and Child are laudable, but they did not make her *the* primary caregiver and financial supporter of Child. At the very least, the trial court's factual findings on this issue are supported by substantial evidence, and the legal conclusion drawn therefrom is one readily ascertainable under this Commonwealth's law. Thus, the trial court did not err by finding Grandmother was not a *de facto* custodian of Child.

■ Having found the trial court did not err by finding Grandmother is not a *de facto* custodian, we now turn to Grandmother's argument that the trial court should have held Father in contempt for violating the terms of the agreed-to visitation between Grandmother and Child. It is undisputed that Father did not comply with the visitation agreement's terms. Father testified he purposefully stopped permitting Child to see Grandmother because the child was visibly upset about going to see Grandmother. Father even introduced a video of the child being upset. The trial court found "no fault" with Father's decision to terminate the agreed-to

visits based on Father's testimony, the video of Child being upset about going to see Grandmother, the neglect proceeding records indicating Child's ongoing fears of Mother and Grandmother, and new allegations against Grandmother and her ongoing investigation by social services.

■ Father responds that there is no legal basis for appealing a denial of contempt. Alternatively, he argues the trial court's factual findings support the denial. Concerning whether the denial of a contempt ruling is subject to appellate review, the Court in *Mason v. Miracle*, 297 Ky. 479, 180 S.W.2d 403 (Ky.App.1944), stated an order refusing to adjudge a party guilty of contempt is subject to appellate review. Thus, this Court may properly examine the issue.

Here, the trial court's factual findings are supported by substantial evidence. Father testified to the majority of the facts and submitted a video and paper exhibits supporting his claims, including letters from Child's treating mental-health professional detailing reports of abuse by Mother and Grandmother. Because the trial court's findings are substantially supported by a witness's testimony, it would be error for us to substitute our judgment for the trial court's. *Moore v. Asente*, 110 S.W.3d 336, 355 (Ky.2003). Accordingly, we will not disturb the trial court's finding that Father was not at fault and should not be held in contempt for ceasing visitation with Grandmother. Thus, the trial court did not err by denying the contempt motion.

■ Grandmother next argues the testimony of Stephanie Adamkin, the Child's counselor, should not have been admitted as evidence. Grandmother claims Father did not respond to formal discovery requests regarding expert witnesses, thus Father should have been precluded from

introducing Adamkin's testimony. Father responds that Adamkin's testimony was introduced solely to respond to the motion for contempt, not to resolve the *de facto* custodian issue. Accordingly, whether the discovery request was complied with as it relates to the *de facto* custodian issue is irrelevant because her testimony was not utilized for the *de facto* custodian issue.

We agree with Father that the testimony was properly admitted, limited, and utilized in resolving the contempt issue. Even if Father failed to comply with discovery requests and should have been precluded from introducing Adamkin's testimony on the *de facto* custodian issue, Adamkin's testimony did not bear on whether Grandmother was a *de facto* custodian. Thus, the trial court did not err by admitting her testimony to resolve the contempt claim.

Finally, Grandmother argues the case should be remanded for further hearings regarding custody and visitation. We agree. Grandmother claims the hearing was limited solely to her *de facto* custodian and contempt issues, thus the evidence she presented was limited to those issues. Grandmother claims the trial court erroneously resolved her petition for custody and visitation *in toto* in spite of the hearing's limited nature. After a careful review of the record, we agree that the trial court and the parties limited the hearing to the *de facto* custodian and contempt issues. Thus, we remand for additional proceedings on Grandmother's custody and visitation petition. Because Grandmother has standing to bring her petition but is not a *de facto* custodian, to obtain custody Grandmother must prove either: (1) the parents are shown by clear and convincing evidence to be unfit custodians; or (2) the parents have waived their superior right to custody by clear and convincing evidence.

*Mullins v. Picklesimer,* 317 S.W.3d 569, 578 (Ky.2010).

This standard is difficult to meet because in Kentucky "[p]arents of a child have a fundamental, basic, and constitutional right to raise, care for, and control their own children." *Id.* (citing *Davis v. Collinsworth,* 771 S.W.2d 329, 330 (Ky. 1989)). *See also Lambert v. Lambert,* 475 S.W.3d 646, 651–52 (Ky.App.2015). Likewise, to obtain visitation rights, Grandmother must rebut by clear and convincing evidence the presumption that the parents are acting in the child's best interests, and she must prove that visitation with Grandmother is in the child's best interests. KRS 405.021, *Walker v. Blair,* 382 S.W.3d 862 (Ky.2012).

Here, because the hearing concerned only Grandmother's *de facto* custodial status and Father's alleged contempt, and those two issues have been resolved against Grandmother and now affirmed by us, Grandmother's petition for custody and visitation may proceed pursuant to *Mullins* and *Walker.* We express no opinion on whether Grandmother's custody and visitation claims are meritorious; we simply remand due to the fact that they have not been fully addressed.

Accordingly, we affirm and reverse the trial court's order in part and remand for further proceedings consistent with this opinion.

## CONCLUSION

The trial court did not err by finding Grandmother is not a *de facto* custodian, or by finding Father should not be held in contempt for violating the visitation agreement's terms. However, the trial court did err by terminating Grandmother's petition for custody and visitation without determining whether Grandmother, as a

non-*de facto* custodian, can demonstrate Mother and Father are unfit custodians, or whether Mother and Father waived their superior right to custodial status. Thus, we affirm the trial court's order inasmuch as it relates to Grandmother's lack of *de facto* custodian status, and inasmuch as it found Father should not be held in contempt. We otherwise reverse and remand for further proceedings on Grandmother's petition for custody and visitation.

ALL CONCUR.