**Robert Allen JONES, Jr., Appellant**

v.

**Jocelyn Nicole JONES and Suszanne Jones, Appellees**

**NO. 2015–CA–001284–ME AND 2015–CA–001882–ME**

Court of Appeals of Kentucky.

JANUARY 20, 2017; 10:00 A.M.

---

BRIEF FOR APPELLANT ROBERT ALLEN JONES: Paula Gay Richardson Morehead, Kentucky, Marsha Megan Hughes Richmond Morehead, Kentucky

BRIEF FOR APPELLEE SUSZANNE JONES: Earl Rogers, III Morehead, Kentucky

NO BRIEF FILED ON BEHALF OF JOCELYN NICOLE JONES

BEFORE: JONES, D. LAMBERT, AND TAYLOR, JUDGES.

1. Given that the parties to this appeal share a common family name, this opinion will refer to them by their first names.

2. This opinion will refer to the first appeal, assigned number 2015–CA–001284, as the "custody appeal," and the second appeal, assigned number 2015–CA–001882, as the "child support appeal."

3. Jocelyn Jones is not a party to either appeal.

## OPINION

LAMBERT, D., JUDGE:

Robert Jones brings two appeals from a series of orders entered by the Rowan Circuit Court. The first appeal arises out of the trial court's entry of a joint custody order, which awarded joint custody of the biological child of Robert Jones to Robert and his sister, Suszanne Jones.[1] The second appeal arises out of orders issued subsequently to the custody order, one order directing Robert to pay child support to Suszanne, and two orders directing him to pay a total of $3,000 in prospective attorney fees to Suszanne.[2] The parties ask this Court to determine whether the trial court properly awarded a share of custody to Suszanne, and whether the trial court adhered to the necessary procedures in issuing its subsequent rulings. After careful review of the record, we find that the trial court improperly found that the child had a *de facto* custodian, awarded joint custody and attorney fees, and we therefore reverse the trial court's rulings in both appeals.

## I. FACTUAL AND PROCEDURAL HISTORY

These appeals originate in an action to dissolve the marriage of Robert and his wife, Jocelyn Jones.[3] The couple had one son during their marriage, who is the minor child at issue in the custody appeal. Robert filed the petition for dissolution on April 6, 2015, and an *ex parte* motion for emergency custody the next day. On April 7, 2015, the trial court granted Robert's motion, and set the matter for further hearing on May 8, 2015.

Suszanne, Robert's sister and the biological aunt of the child at issue, moved to intervene in the divorce action on April 29, 2015. Simultaneously therewith, she also filed an answer to the petition and a request for custody of the child as *de facto* custodian.

Jocelyn did not appear at the May 8th hearing, though Robert and Suszanne did. Jocelyn's absence was attributed to a lack of notice and considerable difficulty in serving her with process. Robert filed a motion to dismiss Suszanne's motion to intervene, arguing she lacked standing to pursue custody absent a judicial finding that she is a *de facto* custodian pursuant to KRS 403.270.

Without appointing a guardian *ad litem* for either the child or Jocelyn, the trial court set the matter for another hearing on June 2, 2015. The trial court also deferred ruling on the motion to intervene. A six-hour hearing took place on June 2, 2015, at which both parties testified in addition to numerous other witnesses.

Robert testified on his own behalf, and provided documentary evidence supplementing his testimony. He testified that he served in the United States Marine Corps until 2008, at which time he returned to the civilian workforce as a truck driver. With Jocelyn being absent, and his new job keeping him away from home during the week, Robert necessarily had to find others to assist in caring for his son. Robert left his son in the care of his father and step-mother, as well as Suszanne, for a few days each week. However, Robert also testified that he always returned home on weekends and most holidays, when the boy would stay with him. He testified that he paid for the babysitting services rendered by his family members, and he even gave Suszanne access to his bank account for the purpose of providing for his son. Robert further testified that he provided medi-

cal, dental, and vision insurance for the child. He testified that he provided Suszanne with a vehicle and insurance coverage for the benefit of his son while in her care, as well as paying Suszanne's phone bill several times since 2007 so he could communicate with the child.

Suszanne's evidence consisted not just of her own testimony, but also that of multiple witnesses. She admitted during her testimony that Robert never stopped seeing the child and that Robert had, in fact, paid her for the babysitting services. Suszanne's ex-husband even testified on cross-examination that Robert had asked him to care for the boy, and paid him for the service as well. Suszanne conceded that Robert gave her access to his bank account and that she had made withdrawals for the benefit of the child. She testified that Robert would pick up the child on most weekends, though her testimony was that he was not consistent in doing so. She called numerous character witnesses.

Suszanne also called a 14 year old girl, the niece of both Robert and Suszanne, to testify. Suszanne has permanent custody of this child. The trial court took the girl into chambers to question her, away from counsel for both Suszanne and Robert. While the chambers recording equipment did create a record of this examination, the trial court did not permit the parties' counsel to observe as it occurred (even via closed circuit video) or to ask or submit questions. This witness offered factual testimony as to the home conditions for the child at Suszanne's residence, as well as character testimony alleging specific events of bad behavior on Robert's part. She denied that Robert had ever given Suszanne any funds for the care of the child. The witness opined that Robert physically abused the child, and that Robert had likely pressured the child to "say

things that aren't true" if the circuit court spoke to the child.

Immediately following this hearing, the trial court issued a ruling regarding temporary custody. The trial court ruled that temporary custody should remain unchanged, and Robert retained sole custody, but must allow phone contact between the child and Suszanne every other day.

Without further hearing, the trial court entered its final custody order on July 31, 2015. In that order, the trial court awarded joint custody of the child to both Robert and Suszanne, simultaneously finding that Suszanne was a *de facto* custodian of the child. The trial court's factual findings also included the following: that Robert had cared for and provided for the child financially; that beginning around February of 2015, Suszanne kept the child for approximately two nights per week; that Suszanne was primarily caring for the child prior to the entry of the emergency custody order of April 7, 2015; that Suszanne testified that she had provided for the child. Robert moved to alter, amend, or vacate, this order, which the trial court denied. At that point Robert initiated the custody appeal.

Suszanne then sought child support from Robert. The trial court conducted a hearing on Suszanne's motion for child support at the same time at which they argued the motion to alter, amend, or vacate. Robert contended that he was not given adequate time to prepare for Suszanne's motion, it having been filed only two days before the hearing. The trial court directed the parties to exchange financial information by August 24, 2015. Following a hearing, the trial court, on September 14, 2015, ordered Robert to pay $507.17 per month, based on Suszanne's calculations, which did not take into account Jocelyn's income. According to Robert's calculations, his monthly obligation should have been approximately $183.00. As the trial court's order failed to include Jocelyn's income, no order imposing a child support obligation was entered against Jocelyn.

On August 26, 2015, Suszanne moved the court to award her $1,500 in prospective attorney fees, to assist her in defending against the custody appeal. The trial court granted the motion on September 11, 2015. Robert moved to alter, amend, or vacate, that order, which the trial court denied on October 19, 2015.

Robert initiated the second appeal, seeking review of both the child support order and the October 19th attorney fee order. Despite the two pending appeals, on November 5, 2015, the trial court issued another order granting Suszanne's second motion for an additional $1,500 for prospective attorney fees.

## II. ANALYSIS

### A. THE CUSTODY APPEAL, 2015–CA–001284

#### 1. STANDARD OF REVIEW

When reviewing child custody cases, we engage in a two-step analysis. These two steps each have a different standard of review. First, the trial court's findings of fact are examined for clear error, and findings may be set aside when they lack substantial evidence to support them. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). If, after review, this Court determines the factual findings do not present clear error, the analysis shifts to an examination of the trial court's legal conclusions, looking for abuse of discretion using a *de novo* standard. *Heltsley v. Frogge*, 350 S.W.3d 807, 808 (Ky. App. 2011). Abuse of discretion occurs when a ruling is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Common-*

*wealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

## 2. THE TRIAL COURT ERRED IN DETERMINING SUSZANNE MET THE CRITERIA OF A *DE FACTO* CUSTODIAN

■ The Supreme Court of the United States has long held that parents have a basic human right to direct the upbringing of their children, which is so fundamental that it warrants constitutional protection. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The Kentucky Supreme Court has echoed its federal counterpart. *Cabinet for Health and Family Serv. v. A.G.G.*, 190 S.W.3d 338, 342 (Ky. 2006) ("Parental rights are so fundamentally esteemed under our system that they are accorded Due Process protection under the Fourteenth Amendment of the United States Constitution.")

In order for a nonparent to become a party to a dispute over custody of a child, they must hold the status of *de facto* custodian. KRS 403.280(4). A *de facto* custodian is a person who proves by clear and convincing evidence to have been a child's primary caregiver and financial supporter, for a period of six months (if the child is under three years old) or one year (for older children). KRS 403.270(1). This language has been interpreted to mean that in order to be a *de facto* custodian, the nonparent must not simply be *a* primary caregiver, but must, in fact, be *the* primary caregiver. *Consalvi v. Cawood*, 63 S.W.3d 195, 197–98 (Ky. App. 2001), *overruled on other grounds by Boone v. Ballinger*, 228 S.W.3d 1 (Ky. App. 2007).

Kentucky Courts have also repeatedly held that when a nonparent shares the parenting responsibilities with a natural parent, the nonparent cannot, as a matter of law, acquire *de facto* custodian status. *Mullins v. Picklesimer*, 317 S.W.3d 569, 574 (Ky. 2010) ("[P]arenting the child alongside the natural parent does not meet the de facto custodian standard."); *Brumfield v. Stinson*, 368 S.W.3d 116, 118 (Ky. App. 2012) ("[O]ur law is clear that even if a nonparent provides care and/or financial support for a child, if such is in conjunction with a natural parent, the nonparent will not qualify as a de facto custodian."); *Boone* 228 S.W.3d at 8 (KRS 403.270 was "unavailable" to non-parent caretaker because care was provided "alongside the natural parent").

The trial court ignored this case law and its own factual findings in concluding that Suszanne, a paid, but related, child care provider, met the criteria laid out in KRS 403.270. The trial court explicitly found that Robert, the boy's natural parent, had cared for the child and supported him financially.

In light of the authorities contradicting the trial court's ruling, we must conclude that the ruling lacks support from, and is, in fact, refuted by, sound legal principles. Thus, we conclude that the trial court abused its discretion in holding Suszanne met the criteria to be a *de facto* custodian.

## B. THE CHILD SUPPORT APPEAL, 2015–CA–001882

## 1. THE ERRORS ALLEGED IN THE CHILD SUPPORT APPEAL DERIVE FROM THE ERRONEOUS RULING AND ABUSE OF DISCRETION BY THE TRIAL COURT

■ Given our conclusion herein that the trial court improperly granted Suszanne *de facto* custodian status, we must likewise conclude that she lacked standing to intervene in Robert's divorce proceedings. As a consequence, any rulings issued by the trial court stemming from the ruling that Suszanne held that status are also reversible error.

Absent the ruling allowing Suszanne to participate in the proceedings, there would have been no permanent custody order granting Suszanne joint custody. The subsequent rulings awarding her child support and attorney fees flow directly from that error, and lack support in either fact or law.

## III. CONCLUSION

The trial court impermissibly, and in contravention of binding authority, conferred *de facto* custodian status on Suszanne Jones. The trial court's denial of Robert Jones' motion to alter, amend, or vacate, that order compounded, rather than corrected, the abuse of discretion. Consequently, we reverse the ruling of the trial court in Appeal No 2015–CA–001284.

Further, because the legal foundation underlying the trial court's ruling in the child support appeal was laid in error, the trial court's rulings at issue in Appeal No. 2015–CA–001882 cannot stand. Accordingly, we reverse and vacate the trial court's orders awarding child support and attorney fees. We further remand this action to the trial court with the instruction to order the refund of the erroneously awarded attorney fees to Robert by Suszanne.

ALL CONCUR.