RENDERED:  FEBRUARY 25, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0518-ME

RITA STUMP                                                         APPELLANT

APPEAL FROM FLOYD CIRCUIT COURT
v.        HONORABLE DWIGHT S. MARSHALL, JUDGE
ACTION NO. 20-CI-00643

SHAWN TAYLOR SPENCER                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, MAZE, AND McNEILL, JUDGES.

McNEILL, JUDGE:  Rita Stump (Stump) appeals from the order of the Floyd

Family Court denying her motion to be appointed *de facto* custodian of Shawn

Taylor Spencer's children and dismissing her petition for custody.  Finding no

error, we affirm.

Stump is the maternal grandmother of E.S. and B.S., the minor children of her late daughter[1] Sarah Stump and Shawn Taylor Spencer ("Spencer"). From April 2017 to October 2020, E.S. and B.S. resided primarily with Stump. After Sarah's death in October 2020, the children went to live with Spencer. On November 2, 2020, Stump filed a petition in Floyd Family Court seeking custody of E.S. and B.S. Spencer moved to dismiss the petition for lack of standing and Stump filed a motion to be appointed *de facto* custodian.

At a hearing on the motion, Stump testified that from April 2017 until October 2020, she was the primary caregiver of the children. She bought most of the children's clothing, provided the children's food, gave the children baths, and got them ready in the morning. She would also take E.S. to her speech therapy, although Sarah would sometimes accompany her to sign paperwork. Stump testified that due to Sarah's health issues, Sarah was incapable of taking care of E.S. and B.S. Several witnesses, including Stump's son and two of Sarah's ex-boyfriends, also testified that E.S. and B.S. lived with Stump.

Stump stated that Sarah provided no financial assistance towards caring for the children. However, E.S. received Supplemental Security Income for some period of April 2017 to October 2020. Spencer was ordered to pay child support, but Stump testified she would only receive payments when his wages

---

[1] Sarah Stump passed away in October of 2020 due to health issues.

were garnished.  Occasionally, he would pay $150 of his $300 obligation, but it was sporadic.  A big portion of Spencer's child support came out of his taxes.

Stump testified that Spencer exercised his visitation rights and saw the children every other weekend for the first year or so.  While she claimed Spencer's visitation became less frequent over the next two years, text messages between Stump and Spencer, introduced by Spencer at the hearing, establish Spencer's visitation with the children was regular and consistent throughout the period of April 2017 through October 2020.  Stump's son confirmed that Spencer regularly exercised his visitation rights.

Although Spencer did not testify at the hearing, the text messages further show that Spencer was involved in caring and providing for the children during his parenting time.  He mentions feeding and bathing the children, throwing a birthday party, potty training, and giving them medicine.  He is also invested in the children's well-being, frequently asking Stump to update him on their learning, and discussing their health and nutrition.

Following the hearing, the family court entered findings of fact, conclusions of law, and a judgment dismissing Stump's petition for custody.  The court found that Stump "was the caregiver and financial supporter of the minor children in conjunction with [Spencer]."  It further found that Spencer "continued to exercise his role as the father of the minor children," and "at no time advocated

[sic] the role of primary caregiver and financial supporter of the minor children to [Stump]." This appeal followed.

"Upon review of *de facto* custodian and child custody proceedings, this Court must determine whether the family court's findings of fact are clearly erroneous." *Lage v. Esterle*, 591 S.W.3d 416, 420 (Ky. App. 2019) (citations omitted). "Our review of related legal issues and questions of law is *de novo*." *Id.* (citation omitted).

Stump raises two allegations of error on appeal: 1) the family court's finding that Spencer was a primary caregiver was clearly erroneous and 2) the family court abused its discretion when it ruled she did not meet the requirements of a *de facto* custodian. Because these allegations are closely related, we will analyze them together.

"Kentucky Revised Statutes ("KRS") 403.270(1) requires a court to determine by clear and convincing evidence whether a person meets the statutory definition of a *de facto* custodian." *Lage*, 591 S.W.3d at 420. Clear and convincing evidence is evidence that is "substantially more persuasive than a preponderance of evidence, but not beyond a reasonable doubt." *Vinson v. Sorrell*, 136 S.W.3d 465, 468-69 (Ky. 2004) (citation omitted).

At issue is whether Stump established that she was the "primary caregiver" and "financial supporter" of E.S. and B.S. during the period of April

2017 to October 2020.[2]  The family court ruled that Stump failed to show she was the primary caregiver and financial supporter of the minor children because she was parenting alongside Spencer.  Thus, she did not qualify as a *de facto* custodian under KRS 403.270(1)(a) and Kentucky case law.  We agree.

"Before the family court may find that a caregiver has become the 'de facto custodian' entitled to be placed on the same footing as a biological parent in a custody proceeding, the court must determine that the biological parent has abdicated the role of primary caregiver and financial supporter of the child for the required period of time."  *Brumfield v. Stinson*, 368 S.W.3d 116, 118 (Ky. App. 2012) (citation omitted).  Further, "in order to be a *de facto* custodian, the nonparent must not simply be *a* primary caregiver, but must, in fact, be *the* primary caregiver."  *Jones v. Jones*, 510 S.W.3d 845, 849 (Ky. App. 2017) (citation omitted).

"Kentucky Courts have also repeatedly held that when a nonparent shares the parenting responsibilities with a natural parent, the nonparent cannot, as a matter of law, acquire de facto custodian status."  *Id.* (citing *Mullins v. Picklesimer*, 317 S.W.3d 569, 574 (Ky. 2010) ("[P]arenting the child alongside the natural parent does not meet the de facto custodian standard.")); *Brumfield*, 368

---

[2] It is undisputed that the children resided with Stump for the requisite statutory period to establish *de facto* custodian status.  *See* KRS 403.270(1).

S.W.3d at 118 ("[O]ur law is clear that even if a nonparent provides care and/or financial support for a child, if such is in conjunction with a natural parent, the nonparent will not qualify as a de facto custodian.")).

The facts of this case are like those in *Burgess v. Chase*, 629 S.W.3d 826 (Ky. App. 2021), where a panel of this Court recently reversed a trial court's finding of *de facto* custodian status. There, paternal grandmother argued that she had been child's primary caregiver and financial provider for 13 years. *Id.* at 828. Mother exercised her parenting time by caring for the child during school breaks. *Id.* Grandmother alleged mother owed $47,000 in child support, but it was undisputed that mother had paid at least $1,000 from a tax return. *Id.* Further, mother testified that she made other informal child support payments but had no documentation. *Id.* The trial court found that "[grandmother] had been Child's primary caregiver and financial provider; and that [grandmother] had been Child's 'acting parent' for nearly all of Child's life[,]" and awarded *de facto* custodian status to grandmother. *Id.* at 830.

> The Court of Appeals reversed, explaining:
>
> Although Joyce generously provided care and financial support to Child for several years when Child and Jason were living with her, Samantha did not allow Joyce to stand in her place as Child's parent nor did she abdicate her own role as primary caregiver and financial supporter. Instead, Samantha continued to exercise her right to parenting time under the joint custody decree and to make decisions and to provide for Child during her

parenting time–in addition to providing some financial support for Child's needs incurred in Kentucky. And Joyce thus provided care and financial support in conjunction with Samantha. Thus, the family court failed to correctly apply the law in determining Joyce to be a *de facto* custodian under these facts.

*Id.*

Similarly, here, Spencer never abdicated his role as primary caregiver and financial supporter of E.S. and B.S. There was ample evidence that Spencer made decisions and provided for the children during his parenting time, which he exercised regularly. He further provided some financial support through his tax refund. While Stump clearly provided a great amount of care and financial support for the children, she was "simply parenting Child[ren] alongside [Spencer] due to [Spencer]'s continuing to exercise [his] parenting time and to provide for and make decisions for Child[ren] during such parenting time." *Id.* at 832.

Stump was required by KRS 403.270(1)(a) to prove her claim "by clear and convincing evidence[.]" We cannot say the family court's findings were clearly erroneous or that it abused its discretion in applying the law to the facts. Therefore, we cannot disturb the family court's order denying Stump *de facto* custodian status.

For the foregoing reasons, the judgment of the Floyd Family Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:      BRIEF FOR APPELLEE:

Ryan D. Mosley            Steven P. Bailey
Prestonsburg, Kentucky    Prestonsburg, Kentucky