RENDERED:  MAY 23, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0799-MR

PAYTON MASSONG                                                          APPELLANT

v.                    APPEAL FROM KENTON CIRCUIT COURT
                      HONORABLE THOMAS A. RAUF, JUDGE
                      ACTION NO. 23-CI-02194

SHELBY SEMPLE AND ANDREW
LEFFLER                                                                 APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, ECKERLE, AND L. JONES, JUDGES.

COMBS, JUDGE:  Payton Massong appeals from an order of the Kenton Family

Court declining to grant her standing to pursue custody of L.D.L., a child born to

Shelby Semple and Andrew Leffler in September 2019.  The family court

determined that Semple had not waived her superior right to custody of her child or

that Massong, the child's paternal aunt, failed to qualify as the child's *de facto*

custodian.  Finding no error, we affirm the family court's order.

In December 2023, Massong filed a verified petition in Kenton Family Court for custody of L.D.L. Massong alleged that the child had lived exclusively at Massong's home since June 2022. Massong alleged that she alone had provided for the child's physical, emotional, and financial support since that time. Massong alleged that she had standing to pursue legal custody of the child because Semple and Leffler were unfit to parent the child and that they had waived their superior rights to custody. Based upon an emergency motion and following an evidentiary hearing, the family court granted temporary custody of the child to Semple and Massong in an order entered on December 27, 2023.

The family court conducted a full evidentiary hearing in February 2024. Based upon the evidence presented, the family court found that while there had been several caregivers in the child's life from June 2022 through December 2023, Semple continued to play a role in L.D.L.'s life throughout the period. The court found that although Semple relied upon the help of others in caring for her child during a period of instability, she continued to provide clothes, food, and medical care for the child. Semple saw the child on an almost weekly basis between November 2022 and December 2023. The family court concluded: that although Massong made sacrifices in an effort to meet the needs of L.D.L., she did not meet the legal standard of *de facto* custodian; that Semple did not waive her superior right to custody; and that Massong lacked standing to pursue custody of

the child.  The court's order relied substantially upon the proposed findings of fact and conclusions of law tendered by the child's guardian *ad litem*.

Massong filed a timely notice of appeal.  Her primary argument on appeal is that the family court erred by concluding that Semple had not waived her superior right to custody.  She contends that Semple abandoned the child to her care.  Massong also argues that the family court also erred by concluding that she was not a *de facto* custodian.  Neither Semple nor Leffler has filed an appellee's brief.  In such an event, the Kentucky Rules of Appellate Procedure (RAP) provide as follows:

> if the appellee's brief has not been filed within the time allowed, the court may (a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

RAP 31(H)(3).  If, how, and where to impose such penalties are decisions entrusted to our discretion.  *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007).  Under the circumstances of this case, we elect to consider the appeal on its merits.

Parents have a fundamental and constitutionally protected right to raise their own children.  *Moore v. Asente*, 110 S.W.3d 336, 358 (Ky. 2003).  The contours of their superior rights to the care and custody of their children are

outlined by statute. *Id.* However, a nonparent may obtain standing to pursue custody of a child by qualifying either as a *de facto* custodian or as a nonparent custodian under circumstances presenting clear and convincing evidence that the parent either is unfit or has waived her superior right to custody. *Appleman v. Gebell*, 706 S.W.3d 223, 228 (Ky. 2024).

*De facto* custodian status exists by virtue of the provisions of Kentucky Revised Statutes ("KRS") 403.270(2). Pursuant to that statute, a *de facto* custodian is one who has been "the primary caregiver for, and financial supporter of, a child who . . . has resided with the person" for a statutory period computed based on the age of the child. KRS 403.270(1)(a). Once the court finds through clear and convincing evidence that the person seeking custody is a *de facto* custodian, it may utilize the best-interest-of- the-child standard to determine custody. KRS 403.270(1)(b).

Custody contests between a parent and a nonparent who does not fall within the statutory definition of a *de facto* custodian are determined under a standard requiring the nonparent to prove that the case falls within one of two exceptions to a parent's superior right to custody. *Appleman, supra.* One exception to the parent's superior right to custody arises if the parent is shown to be "unfit" by clear and convincing evidence. *Id.* A second exception arises if the parent has waived her superior right to custody. *Id.*

Massong contends that the family court erred by failing to conclude that she showed by clear and convincing evidence that Semple had waived her superior right to custody and that Massong was, therefore, entitled to pursue custody of L.D.L. Next, she contends that the family court erred by failing to conclude that she was the child's *de facto* custodian -- giving her the standing necessary to seek custody of the child on an equal footing with Semple. In order to facilitate our analysis, we address Massong's contentions in reverse order.

In order to be placed on the same legal footing as a natural parent in child custody proceedings, a nonparent must qualify as a *de facto* custodian. KRS 403.270(1). To be classified as a *de facto* custodian, the natural parent must be found to have abdicated the role of primary caregiver and financial supporter of the child for the required period of time. *Brumfield v. Stinson*, 368 S.W.3d 116, 118 (Ky. App. 2012) (citation omitted). "[T]he nonparent must not simply be *a* primary caregiver, but must, in fact, be *the* primary caregiver." *Jones v. Jones*, 510 S.W.3d 845, 849 (Ky. App. 2017) (citation omitted). Where a nonparent shares parenting responsibilities with a natural parent, the nonparent cannot, as a matter of law, acquire *de facto* custodian status. *Mullins v. Picklesimer*, 317 S.W.3d 569, 574 (Ky. 2010) ("[P]arenting the child alongside the natural parent does not meet the *de facto* custodian standard."); *Brumfield*, 368 S.W.3d at 118 ("[O]ur law is clear that even if a nonparent provides care and/or financial support for a child, if

-5-

such is in conjunction with a natural parent, the nonparent will not qualify as a de facto custodian.").

We review the family court's findings of fact for clear error; its findings cannot be set aside where they supported by substantial evidence. However, we review the court's application of the law *de novo*. *Ball v. Tatum*, 373 S.W.3d 458, 463-64 (Ky. App. 2012).

There is no doubt from the evidence presented that Massong provided a great degree of care and generous financial support to L.D.L. However, it is also clear from the evidence that Semple continued to exercise her parental rights by providing for her child and making decisions concerning her wellbeing. Semple did not allow Massong to stand in her place as L.D.L.'s parent. While Massong provided needed care and financial support, she did so in conjunction with Semple and others.

Massong was required by the provisions of KRS 403.270(1)(a) to prove her claim "by clear and convincing evidence[.]" The family court's findings were not clearly erroneous; nor did the court err in its application of the law to the facts. Therefore, we cannot disturb its order denying Massong *de facto* custodian status.

Next, we address Massong's contention that Semple waived her superior right to custody of the child. Waiver requires proof of a voluntary

relinquishment of a known right. *Greathouse v. Shreve*, 891 S.W.2d 387, 390 (Ky. 1995). It may be implied by a parent's unequivocal conduct indicating an intent to waive her superior right to custody. *Diaz v. Morales*, 51 S.W.3d 451, 454 (Ky. App. 2001).

In *Mullins*, 317 S.W.3d at 574-75, the Supreme Court of Kentucky held that a nonparent who qualifies as a person acting as parent has standing to seek custody under the provisions of KRS 403.822. However, unlike a *de facto* custodian, a person acting as a parent does not gain standing equal to that of a biological parent. *Id.* at 578; *see also Morton v. Tipton*, 569 S.W.3d 388, 397 (Ky. 2019) ("[T]he superior rights of a parent are not bestowed on a non-parent custodian, regardless of the custodian's relationship to the child or the length of their custodial relationship."). The court explained that the nonparent pursuing custody must prove by clear and convincing evidence either that the parent is an unfit custodian or that the parent has waived his or her superior right to custody. Whether a parent has waived her superior right to custody is a fact-specific determination made after the family court considers the relevant factors. *Penticuff v. Miller*, 503 S.W.3d 198, 203-04 (Ky. App. 2016).

Reviewing the evidence presented in this case, we conclude that the family court did not err by determining that Massong failed to prove by clear and convincing evidence that Semple waived her superior right to custody of L.D.L.

Semple indicated that it was never her intention to give Massong legal custody of the child and that she did not knowingly undertake a course of action that she realized would result in her losing custody of the child. In fact, Semple testified that most communication concerning L.D.L. occurred between Semple and Massong's mother, not Massong. Semple indicated that she believed that Massong's mother was babysitting L.D.L. and/or facilitating Leffler's parenting time.

Semple testified that she communicated to Leffler her desire to stop having L.D.L. bounce around between caregivers so that she could be enrolled in Headstart. Evidence indicated that Semple had a medical card for L.D.L. and that she attended some of the child's doctor's appointments; that she cooked meals for the child and took her to the park, the pool, and trick-or-treating; that she watched television with her; and that she purchased food, clothes, shoes, and toys for her.

The record fails to demonstrate by clear and convincing evidence that Semple expressly or intentionally relinquished her parental right to custody of her child. On the contrary, the evidence indicated that Semple intended to remain in L.D.L.'s life throughout the time that the child was in Massong's care. These actions are inconsistent with Semple's waiver of her superior right to custody of L.D.L. The family court did not find Semple to be unfit. Without a finding that

the parent is unfit or a finding of a knowing and voluntary surrender of parental rights, a parent is entitled to custody of her child.

We affirm the order of the Kenton Family Court.

ALL CONCUR.

BRIEF FOR APPELLANT:          NO BRIEF FOR APPELLEE.

John Rapp
Lexington, Kentucky